IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

H&R BLOCK TAX SERVICES LLC,
   a Missouri limited liability company,

             Plaintiff,

v.

MARSHALL CLAYTON,
   a resident of Alabama,
TAXSERV COMPUTERIZED TAX SERVICES, LLC,
   an Alabama limited liability company, and
TAXSERV Inc.,
   an Alabama corporation,

            Defendants.

Case No. 4:16-cv-00185-SRB

## PRELIMINARY INJUNCTION

Pending before the Court is the Motion for a Preliminary Injunction (Doc. #3) filed by Plaintiff H&R Block Tax Services LLC ("Block") against Defendants Marshall Clayton ("Clayton"), Taxserv Computerized Tax Services, LLC ("Taxserv"), and Taxserv Inc. (the "Competing TaxServ Business") (collectively, "Defendants"), as well as Plaintiff's Memorandum in Support of that Motion. Block's motion came up for hearing on March 24, 2016. Block appeared through counsel Anthony Durone, Esq. Defendants did not appear, although they were provided notice of the motion and hearing. After review of Block's Motion, all briefing and arguments of counsel, the Complaint, the record herein, and applicable law, the Motion is hereby **GRANTED**.

### I.    JURISDICTION AND CHOICE OF LAW

Personal jurisdiction over a non-resident defendant may be obtained by consent or by waiver. *Whelan Sec. Co., Inc. v. Allen*, 26 S.W.3d 592, 595 (Mo. Ct. App. 2000). Personal

jurisdiction is an individual right that may be waived in advance through a forum selection clause contained in the agreement between the parties. *Id.* Under Missouri law, contractual choice-of-law provisions are enforced. *PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 326 (8th Cir. 2001).

In Section 27 of the Franchise License Agreement ("FLA"), Taxserv agreed that all claims arising from its relationship with Block would be governed by Missouri law and waived objections to the jurisdiction and venue of a federal court in Jackson County, Missouri. In addition, pursuant to Sections 30 and 33 FLA, Clayton and any successor are bound by its terms. Moreover, as discussed below, the Competing TaxServ Business is a successor to Taxserv under Missouri law, and Taxserv's contacts are attributable to the Competing TaxServ Business. *See, e.g., Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 654 (5th Cir. 2002); *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 (10th Cir. 1991).

Thus Defendants have both stipulated and consented to Missouri law as the choice of law and to personal jurisdiction in this Court.

## II. BLOCK HAS SATISFIED THE NECESSARY ELEMENTS TO OBTAIN PRELIMINARY INJUNCTIVE RELIEF.

Whether a preliminary injunction should issue in any particular case involves a consideration of the following factors: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015); *see also Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). No single factor is determinative; "rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." *United Indus. Corp. v. Clorox Co.*, 140 F.3d

2

1175, 1179 (8th Cir. 1998). Moreover, in considering these factors, the court may properly consider evidence that would ordinarily be inadmissible, such as hearsay, in support of granting a preliminary injunction. *See, e.g., Ass'n of Cmty. Organizations for Reform Now v. Scott*, No. 08-CV-4084-NKL, 2008 WL 2787931, at *3 n. 5 (W.D. Mo. July 15, 2008) (citing *Bebe Stores, Inc. v. May Dep't Stores Int'l, Inc.*, 230 F. Supp. 2d 980, 988 n. 4 (E.D. Mo.)).

Here, every one of the relevant factors supports Block's request for entry of a preliminary injunction to preserve the *status quo* and to protect Block from ongoing irreparable injury attributable to the conduct of Defendants.

## A. Plaintiff Is Substantially Likely to Succeed On The Merits Of Its Claims

Plaintiff brings claims for breaches of the FLA and the Conversion Agreement, including without limitation the post-contractual obligations and confidentiality, nonsolicitation, and noncompetition covenants contained therein. Plaintiff has shown a substantial likelihood of success on the merits of its breach of contract claims because the evidence establishes that Defendants are in breach of their enforceable obligations.

### 1. The FLA Was Properly Terminated

Block has demonstrated that Taxserv's failure to pay royalties and other sums owed to Block and failure to timely cure its defaults constituted good cause for termination. *See, e.g., Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 931 (8th Cir. 1999); *Dunkin' Donuts Franchised Rests. LLC v. Kev Enters., Inc.*, 634 F. Supp. 2d 1324, 1335 (M.D. Fla. 2009) ("Failure to make payments called for under a contract constitutes a breach going to the root of the contract."). Therefore, Block is likely to succeed on the merits of its claim for breach of contract for failing to pay required royalties and other sums against all Defendants.

3

## 2. Defendants Are In Breach Of Their Post-Termination Obligations

Upon the termination of the franchise, the FLA required Taxserv to among other things, deliver to Block its client lists and records, discontinue all use of Block's trademarks, return to Block all materials that Block had furnished to Taxserv for use in its franchised business, and execute the documents necessary to assign to Block the business phone numbers associated with Taxserv's franchised business. The evidence presented by Block shows that Defendants have not complied with these obligations, and, therefore, Block is likely to succeed on its claim that Defendants are in breach of their post-termination obligations.

## 3. The Post-Termination Covenants Contained In The FLA And The Conversion Agreement Are Enforceable Against Defendants[1] And Defendants Have Breached Those Covenants

Under Missouri law, a noncompetition agreement is valid and enforceable if it: (1) relates to a legitimate interest of the employer; and (2) contains reasonable limitations as to time and geographic scope. *Healthcare Servs. v. Copeland*, 198 S.W.3d 604, 610 (Mo. 2006) (en banc). Other courts in this District have held that covenants similar to those presented here are valid and enforceable, and have issued interim injunctions on that basis. *See, e.g., H&R Block Tax Servs. LLC v. Haworth*, No. 4:15-cv-00211-SRB, Order [Dkt. 8] (W.D. Mo. Mar. 26, 2015) (restraining a former Block franchisee from violating identical post-termination covenants against competition and solicitation). This Court reaches the same conclusion here.

The post-termination covenants to which Defendants agreed protect important interests of Block, including: Block's investment in the parties' transaction and the client lists and information it acquired; Block's established brand, goodwill, and confidential business information; and Block's interest in preventing Defendants from using such assets to compete

---

[1] The Conversion Agreement incorporates the covenants against competition and solicitation contained in the FLA.

4

with Block, diverting away its clients and obtaining an undue advantage for the Taxserv Competing Business. *See, e.g., Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931, 937 (8th Cir. 2002) ("The Missouri courts have frequently held that . . . substantial and individualized customer contacts are a protectable interest warranting injunctive relief enforcing a covenant not to compete."); *Kessler-Heasley Artificial Limb Co., Inc. v. Kenney*, 90 S.W.3d 181, 186 (Mo. Ct. App. 2002) ("Stock in customers, also referred to as customer contacts, are a legitimate protectable interest."). Furthermore, H&R Block has a legitimate and protectable interest in protecting its client information and other confidential information from use by a competitor. *See Mid-States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613, 617 (Mo. App. E.D. 1988) ("The employer has protectable rights in trade secrets and customer contacts."); *see also Naegele v. Biomedical Sys. Corp.*, 272 S.W.3d 385, 389 (Mo. App. E.D. 2008) ("In Missouri, the courts have identified two protectable interests of employers: customer contacts and trade secrets.").

The covenants are also reasonably tailored to serve these interests. Both the covenant against competition and the covenant against solicitation apply for only two years after the termination of FLA and are limited to a twenty-five-mile radius around Taxserv's former franchise territory. Missouri courts have allowed similar and broader restrictions. *See, e.g., Kessler-Heasley Artificial Limb Co.*, 90 S.W.3d at 188 (upholding five-year limit within a 50-mile radius); *see also Whelan Sec. Co.*, 379 S.W.3d at 846-47 (enforcing noncompetition clause in employment contract that prohibited employee from working for competing business within fifty miles of his place of employment for two years); *Silvers, Asher, Sher, & McLaren, M.D.s Neurology, P.C. v. Batchu*, 16 S.W.3d 340, 343 (Mo. Ct. App. 2000) (enforcing two-year, seventy-five mile noncompete provision); *Watlow Elec. Mfg. Co. v. Wrob*, 899 S.W.2d 585, 587-88 (Mo. Ct. App. 1995) (upholding five-year time limit); *Champion Sport Ctr., Inc. v. Peters*,

5

763 S.W.2d 367, 370 (Mo. Ct. App. 1989) (enforcing a restrictive covenant barring the seller of a business from competing with it for eight years in three counties); *Long v. Huffman*, 557 S.W.2d 911, 915 (Mo. Ct. App. 1977) (upholding a covenant barring competition for five years within a sixty-mile radius).

Upon consideration of the facts and evidence presented in this case, the Court finds that the post-termination covenants contained in the FLA and the Conversion Agreement are reasonably tailored to protect Block's legitimate business interests.

Since the termination of the FLA, the Competing TaxServ Business has continued to operate a tax return preparation office that is located less than twenty-five miles away from each of Taxserv's formerly franchised offices while using Block's records to solicit clients of those offices. This conduct plainly violates the covenants contained in the FLA and the Conversion Agreement as well as numerous other post-termination provisions of those agreements. Thus, Block is likely to succeed on the merits of its breach of contract claims against all Defendants.

### B. Irreparable Harm

Block has also shown that it will likely suffer irreparable harm if a preliminary injunction is not issued. Irreparable harm is shown where the moving party demonstrates that an award of damages to the plaintiff would not compensate the plaintiff for the harm alleged. *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010); *see also Minana v. Monroe*, 467 S.W. 3d 901, 907 (Mo. App. E.D. 2015). Courts have also inferred irreparable injury from a breach of a covenant not to compete, solicit, or disclose confidential information. *See Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 75 (Mo. banc. 1985); *Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931, 935 (8th Cir. 2002); *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984); *Moore Bus. Forms, Inc. v. Wilson*, 953 F. Supp. 1056, 1062 (N.D. Iowa 1996), *aff'd*, 105 F.3d 663 (8th Cir. 1996). The loss of clients and business is also an irreparable injury. *See,*

6

*e.g., Associated Producers Co. v. City of Independence*, 648 F. Supp. 1255, 1258 (W.D. Mo. 1986).

The evidence presented by Block shows that Defendants continue to operate a tax return preparation business using the same core "TaxServ" trade name, in close proximity to Taxserv's formerly franchised offices, and using the same telephone number. This competing office is just one mile away from the highest volume location Taxserv operated under the FLA and where a company-owned H&R Block office currently operates. Thus, Defendants will attract, through the TaxServ Competing Business, the clients of the formerly franchised business, which will drastically inhibit Block's ability to re-establish its business in the formerly franchised area. Such breach by Defendants will cause immeasurable loss to Block and irreparably harm Block's ability to preserve its client relationships. In sum, this consideration also weighs in favor of Block's entitlement to a preliminary injunction against all Defendants.

### C.     Balancing Of Potential Harms

This balancing factor also weighs in favor of Block. As previously discussed, Defendants entered into valid agreements and/or assumed the obligations thereunder that limited their rights to engage in tax preparation activities following the termination of those agreements. Granting injunctive relief in Block's favor would operate only to require Defendants to adhere to the terms of contracts to which it already agreed, while denying injunctive relief would potentially operate to allow Defendants to act contrary to their contractual obligations. In the Court's view, allowing parties to benefit from a breach of contract would result in greater harm than binding those parties to terms of contracts to which they already agreed. Moreover, whereas the injury threatened to Block will be irreparable, any injury to Defendants is entirely self-inflicted, and could be remedied by an award of damages.

7

### D. Public Interest

The public interest also favors granting a preliminary injunction here. *See Schott v. Beussink*, 950 S.W.2d 621, 625 (Mo. Ct. App. 1997) ("Missouri courts recognize that public policy approves employment contracts containing restrictive covenants because the employer has a proprietary right in its stock of customers and their good will, and if the covenant is otherwise reasonable, the court will protect the asset against appropriation by an employee"); *cf. Haines v. VeriMed Healthcare Network, LLC*, 613 F. Supp. 2d 1133, 1137 (E.D. Mo. 2009) (quoting *Lektro–Vend Corp. v. Vendo Co.*, 660 F.2d 255, 265 (7th Cir. 1982)) ("'The recognized benefits of reasonably enforced noncompetition covenants are now beyond question.'"). The public interest is also furthered by preserving the enforceability of contractual relationships. *Walters v. M & I Marshall & Ilsley Bank*, No. 09-0506-CV-W-ODS, 2009 WL 2069581, *3 (W.D. Mo. July 14, 2009). Therefore, the Court concludes there is a public interest in issuing a preliminary injunction to enforce the terms of the Defendants' obligations to Block.

### E. The Court's Injunction Encompasses Clayton, The Competing TaxServ Business, And Anyone Acting In Concert

Under Sections 30 and 33 of the FLA, Clayton and the Competing TaxServ Business, as Taxserv's successor, are bound by all of the terms, covenants, conditions, and obligations incumbent upon Taxserv. In addition, the evidence Block has submitted demonstrates that under the law, the Competing TaxServ Business is the successor-in-interest to Taxserv because, among other things, it operates the same business as Taxserv; uses the name, assets, and employees of Taxserv; is holding itself out to Taxserv's clients as the same business; is using Taxserv's phone number; and operates nearby. *See, e.g., Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr.*, 336 F.3d 801, 804 (8th Cir. 2003). Therefore, Taxserv is also obligated on this basis, as a successor corporation may be liable for its predecessor's obligations where the successor is "merely a

8

continuation" of the predecessor. *Id.* at 803.

Moreover, the injunction properly covers Clayton and the competing TaxServ Business because the evidence submitted shows that they are acting in concert with Taxserv. Fed. R. Civ. P. 65(d)(2); *see also Super. Gearbox Co. v. Edwards*, 869 S.W.2d 239, 257 n. 9 (Mo. Ct. App. 1993) (acknowledging "the principle that, if an individual knows about a non-compete agreement and assists a party to that agreement in violating it, the individual may be enjoined from benefiting from the breach").

## II. SECURITY

Under the circumstances of this case, including the financial position of Block and the fact that the terms of the injunction do not pose a material risk of any injury to Defendants, no security is necessary. Nevertheless, a bond in the amount of $1,000 would be more than adequate to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Plaintiff's Motion is **GRANTED.** Defendants are ordered to perform all of their contractual obligations to Plaintiff.

**IT IS FURTHER ORDERED**, that Defendants, and all persons in active concert or participation with them, are preliminarily enjoined from the following:

1. Directly or indirectly violating the terms of the FLA and the Conversion Agreement, including, but not limited to, the confidentiality, noncompetition, and nonsolicitation covenants in those agreements;

2. For a continuous, uninterrupted period of two (2) years from June 18, 2015 (excluding any period(s) of violation of the FLA and the Conversion Agreement, or period(s) of time required by litigation to enforce the FLA and the Conversion Agreement) from:

9

  a. soliciting in any manner present or former clients of Taxserv's formerly franchised H&R Block offices or otherwise contacting those clients for the purpose of preparing their federal or state income tax returns, and

  b. engaging in the preparation of federal or state income tax returns or the performance of related services in or within twenty-five miles in each direction from each of Taxserv's three franchise locations (29944 U.S. Highway 72, Suite B, Madison, Alabama 35756; 671 Martin Road, Suite B, Huntsville, Alabama 35824; and 900 Bob Wallace Avenue, Suite 124, Huntsville, Alabama 35801);

  3. Directly or indirectly using or divulging in any manner any trade secret or proprietary, confidential, and nonpublic information or materials acquired from Block by virtue of Taxserv's operation under the FLA and the Conversion Agreement within their possession, custody, or control, including, but not limited to, client information and files used or developed in Taxserv's franchised business, and further ordering Defendants to deliver all such materials to Block within seven (7) calendar days;

  4. Directly or indirectly doing any deliberate act prejudicial or injurious to the goodwill or name of Block;

  5. Directly or indirectly using Block's proprietary marks and all supplies and other materials that Block furnished to Taxserv for use in its franchised business, including, but not limited to, the exterior sign bearing the H&R Block name used at Taxserv's formerly franchised office located at 671 Martin Road, Suite B, Huntsville, Alabama 35824, and further ordering Defendants to deliver to Block all such materials and supplies within seven (7) calendar days; and

10

Case 4:16-cv-00185-SRB   Document 15   Filed 03/24/16   Page 10 of 11

6. Directly or indirectly using the phone numbers associated with Taxserv's formerly franchised business, including, but not limited to, (256) 564-7001, and further ordering Defendants to sign any and all documents necessary or required by the appropriate service provider to effectuate the assignment of the telephone numbers to Block within seven (7) calendar days.

**IT IS FURTHER ORDERED** that Defendants file with the Court and serve on counsel for Block, within ten (10) calendar days after entry of the injunction, a written report setting forth in detail, under oath, the manner and form in which Defendants have complied with the injunction.

**IT IS FURTHER ORDERED** that a bond in the amount of $ 1,000 shall be filed by H&R Block within ten (10) days of the entry of this Preliminary Injunction.

**IT IS FURTHER ORDERED** that this Order shall take effect immediately and shall remain in effect until further Order of the Court.

**IT IS SO ORDERED.**

Date: March 24, 2016
2:30 pm

_____
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE